IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Walter Baker, *et al.*, | : |
| | :    Case No. 1:12-cv-798 |
|           Plaintiffs, | : |
| | :    Chief Judge Susan J. Dlott |
|   v. | : |
| | :    ORDER GRANTING DEFENDANTS' |
| Hamilton City Schools Board of Education, | :    MOTION TO DISMISS |
| *et al.*, | : |
| | : |
|           Defendants. | : |
| | : |

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint. Doc. 3. For the reasons that follow, the Court **GRANTS** Defendants' Motion and **DISMISSES** the case in its entirety.

## I. BACKGROUND

Walter and Lisa Baker filed this action for themselves and on behalf of their minor son "B.B." They claim that Defendants — the Hamilton City Schools ["HCS"] Board of Education, Bridgeport Elementary School Principal Terri Fitton, and HCS Superintendent Janet Baker — did not appropriately respond when their son was subjected to harassment while in the fourth grade at Bridgeport Elementary. They seek compensatory and punitive damages.

The Complaint alleges the following facts. B.B. was a student at Bridgeport Elementary School from September 2009 until December 2010. During the early part of his fourth-grade year, in September 2010, B.B. began to experience headaches, stomach aches, nausea, and anxiety and did not want to attend school. B.B. experienced these physical symptoms from September 22, 2010 through October 14, 2010.

1

Sometime in October 2010, B.B.'s parents discovered that B.B. was being bullied, harassed, and intimidated by his classmates at Bridgeport Elementary. On or about October 11, 2010, Mr. Baker attempted to contact Principal Fitton about the bullying situation by calling the Principal and leaving a message. Principal Fitton did not return the call. On or about October 14, 2010, Mrs. Baker and B.B. went to school to talk to Principal Fitton. At or around that time, Mrs. Baker informed Principal Fitton of the bullying situation. Principal Fitton told Mrs. Baker that a formal investigation into the bullying would take place, but an investigation did not take place.

By November 4, 2010, the bullying resumed and became more severe, and B.B. again suffered from headaches, stomach aches, nausea, anxiety, and was upset before and after school. On or about December 6, 2010, Ms. Baker informed B.B.'s fourth-grade teacher about the bullying situation.

In December, the Bakers decided to transfer B.B. through an emergency removal to another school within Hamilton City Schools. On or about December 13, 2010, Mrs. Baker spoke with Tim Carr,[1] who agreed to initiate an emergency removal that would place B.B. in another elementary school. Mr. Carr told Mrs. Baker that he would look into the bullying situation and that Principal Fitton would follow up with Mrs. Baker. The Complaint does not state when B.B.'s transfer went into effect, but the Court gleans from context that the transfer occurred immediately following Mrs. Baker's meeting with Mr. Carr.

---

[1] The Court was unable to find in the Complaint any reference to Tim Carr's job title or his position at the school.

On or about December 17, 2010, Mr. Baker left a message for Superintendent Baker.  He asked why Principal Fitton had not returned his call and asked for a return call.  That same day, Principal Fitton called Mrs. Baker.  Principal Fitton told Mrs. Baker that she did not contact the parents of the students bullying B.B. and did not inform any fourth-grade teachers of the situation.

On or about December 21, 2010, the Bakers met with Principal Fitton, who said she did not believe B.B. was being bullied.  Principal Fitton told the Bakers that an investigation would take place.  It is the Bakers' understanding that no such investigation was completed.

Though not characterized as "facts," Plaintiffs also makes the following assertions in their Complaint.  Bridgeport Elementary has anti-harassment and anti-bullying policies.  Principal Fitton has "final policymaking authority with respect to the day-to-day enforcement of" these policies within Bridgeport Elementary.  Doc. 1 ¶ 5.  Superintendent Baker has "final policymaking authority for the school district with respect to the day-to-day enforcement of" these policies within the school district.  *Id*. ¶ 6.

Regarding the harassment, Plaintiffs state that B.B. was subjected to verbal insults and physical altercations, that the acts occurred on school grounds, and that some of the acts occurred in plain view of school officials.  Plaintiffs state that "being ostracized, humiliated, threatened, and attacked as a daily routine" caused B.B. to suffer serious emotional harm and that Mr. and Mrs. Baker also suffered serious emotional harm due to B.B.'s harassment.  Doc. 1 ¶ 10.

Plaintiffs state that "[d]espite knowledge of the severe and pervasive harassment being suffered by B.B., Defendants [sic] response to the abuse was grossly inadequate."  *Id*. at ¶ 11.

3

Plaintiffs also state that Defendants failed to execute the policies or procedures to protect B.B. from the harassment and failed to adequately train district staff to address and prevent the harassment.

## II. ANALYSIS

Defendants filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). They claim that Plaintiffs have failed to allege facts that state a plausible claim, that Plaintiffs have not plead facts to support a claim arising under the Fourteenth Amendment, and that Defendants are entitled to statutory immunity from Plaintiffs' state law claims.

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept the factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Civ. P. 8(a). To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to

4

relief above the speculative level." *Id.* The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

**B. Federal Claim**

Plaintiffs' single federal claim alleges a "violation of 42 U.S.C. § 1983." Doc. 1 at 7. Section 1983 "is not itself a source of substantive rights" but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see also *Joseph v. Curtin*, 410 F. App'x 865, 867 (6th Cir. 2010) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). To recover under § 1983, a plaintiff must prove that the defendant, while acting under color of state law, violated rights secured by the Constitution or laws of the United States. *Marcum v. Bd. of Educ. of Bloom-Carroll Local Sch. Dist.*, 727 F. Supp. 2d 657, 672 (S.D. Ohio 2010). A local government body can be sued under § 1983 when the allegedly unconstitutional action derives from an official policy or custom. *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690-691 (1978). However, a governmental body cannot be held liable under § 1983 on a respondeat superior theory. *Id.* at 691. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiffs brought their claims against the Board of Education, Principal Fitton, and Superintendent Baker.² "A municipal liability claim against . . . [a] School Board must be examined by applying a two-pronged inquiry: (1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and (2) Whether the . . . School Board is responsible for that violation." *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 505-06 (6th Cir. 1996). A § 1983 claim against a defendant named in her individual capacity must be examined by determining (1) whether the plaintiff "was deprived of a right secured by the Constitution;" and (2) whether any such deprivation occurred under color of state law. *Id*. at 511. Thus, the threshold determination with regard to the claims against all the Defendants is whether Plaintiffs' claim that Defendants failure to protect B.B. from harassment by fellow students amounts to a deprivation of a right secured by the Constitution.

The first step in evaluating a § 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271 (citing *Graham v. Connor*, 490 U.S. 386, 394

---

² Plaintiffs do not specify whether they are suing Principal Fitton and Superintendent Baker in their official or individual capacities. "Suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the governmental entity." *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "[A] local government may be held liable under § 1983 only for adopting a 'policy or custom' that violates federally protected rights." *Mitchell v. McNeil*, 487 F.3d 374, 376 (6th Cir. 2007). "Government officials sued in their individual capacities may be held liable under § 1983 when they violate constitutional rights that are 'clearly established.'" *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If plaintiffs do not designate in which capacity they are suing defendants, defendants are deemed sued in their official capacity by operation of law. *Soper*, 195 F.3d at 853 (citing *Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir. 1992); *Wells v. Brown*, 891 F.2d 591, 592-94 (6th Cir. 1989)).

Whether Plaintiffs are suing Fitton and Baker in their individual or official capacity is ultimately irrelevant in this case because, in either event, the first step in examining a claim brought pursuant to § 1983 is determining whether the plaintiff has asserted a deprivation of a constitutional right. Because the facts alleged by Plaintiffs do not give rise to a constitutional violation, there is no need for further analysis.

(1989)). Plaintiffs claim that Defendants violated B.B.'s Fourteenth Amendment rights. Specifically, they state that Defendants "created a custodial environment . . . for all students subject to the compulsory school attendance law [and that the] custodial environment imposes a constitutional duty on all Defendants to ensure B.B.'s safety and well-being while he attended HCS." Doc. 1 ¶ 35. Though not characterized as a claim, Plaintiffs also state that they seek "to vindicate their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Title IX." *Id*. at ¶ 13. The Court will examine each of these statements in an attempt to identify the specific constitutional right allegedly infringed by Defendants.[3]

### 1. Substantive Due Process

The Due Process Clause of the Fourteenth Amendment forbids states from depriving individuals of life, liberty, or property without due process of law. "Even though the Due Process Clause does not generally impose affirmative duties upon the state to protect those interests, in certain situations the Constitution does impose an affirmative duty of care and protection." *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 910 (6th Cir. 1995). For example, the state must provide prisoners with adequate medical care and committed mental patients with services necessary to ensure their reasonable safety. *Id*. (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976);

---

[3] The bare-bones factual allegations in the complaint make it difficult for the Court to identify the specific constitutional right allegedly infringed in this case. There is nothing in the complaint to illuminate the nature of the alleged harassment and bullying. The complaint lacks a description of even a single incident of the alleged bullying. Nonetheless, the Court will not take allegations of bullying lightly, and it has explored all rights potentially implicated by the alleged conduct to determine whether a viable claim might exist based on the sparse facts alleged.

and *Youngberg v. Romeo*, 457 U.S. 307, 319 (1982)). "[A]n affirmative duty to protect arises 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs.'" *Id*. at 910-11 (quoting *DeShaney*, 489 U.S. at 200). Absent such a special (generally custodial) relationship between the state and an individual, the state does not have a constitutional duty to protect the individual against private actions. *DeShaney*, 489 U.S. at 197 ("[W]e conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.").

Plaintiffs assert that Defendants had an affirmative duty to protect B.B. from harassment because the school had a "special relationship" with B.B. as a student. However, the Sixth Circuit has repeatedly rejected this argument. In its first case addressing the issue of whether compulsory attendance laws created a special relationship between school districts and their students, the Sixth Circuit held that there was no special relationship between a student and the school district that gave rise to a constitutional duty on the part of the board to protect her from the consequences of a seizure while she was on the school bus. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907 (6th Cir. 1995). The court observed that "[d]espite mandatory school attendance laws, the parents, not the state, remain the child's primary caretakers." *Id*. at 911. Then, in a case involving the sexual abuse of a student by a teacher, the Sixth Circuit held that "the Due Process Clause does not impose an affirmative constitutional duty on the School Board to assume the responsibility of protecting its students against the unconstitutional acts of employees." *Doe*, 103 F.3d at 510 (rejecting the plaintiffs' argument that the school board had a

8

constitutional duty to protect the student from abuse by the teacher because of the "special relationship" between the school district and the student).

In 1999, the Sixth Circuit considered the question at issue here: whether the school has a duty to protect a student from the harassing conduct of other students because of the special relationship between a student and the school. *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999). In *Soper*, a mentally impaired female student was harassed, sexually molested, and raped by three male students. The court, relying upon *DeShaney*, held that the facts did not give rise to a constitutional violation: "First, the persons who harmed [the student] were private actors, not governmental or school officials acting under color of state law or pursuant to governmental or school policies. Additionally, there is no 'special relationship' between the [school] and [the student]." *Id*. at 853. More recently, the Sixth Circuit affirmed a district court's dismissal of a student's due process claim brought against a school district after she had been harassed, physically assaulted, and raped by a male high school student with a criminal record. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356 (6th Cir. 2012). The Sixth Circuit rejected the plaintiff's argument that the school district has a "special relationship" with the student that gave rise to an affirmative duty to provide protection. *Id*. at 366.

A sister court in this District recently concluded that allegations that a school board and middle school principal had failed to protect a student from the verbal taunts of classmates did not give rise to a substantive due process claim. *Marcum*, 727 F. Supp. 2d at 672-73. As the *Marcum* court noted, "[t]he Substantive Due Process Clause protects individuals from abuses of *governmental* power. As a general rule, it does not impose a constitutional duty on the school to protect students from harm inflicted by private actors such as their classmates." *Id*. at 673 (citing

9

*DeShaney*, 489 U.S. at 189). Similarly, the district court in *Vidovic v. Mentor City Sch. Dist.* concluded that the school had no constitutional duty to protect or rescue a student from harm imposed by other students. Case No. 1:10-cv-1833, 2013 WL 395263 (N.D. Ohio Jan. 31, 2013) ("Plaintiffs have not established that the school's alleged failure to stop the bullying Ms. Vidovic may have suffered . . . constitute[d] a violation of their substantive due process rights under the Fourteenth Amendment to the United States Constitution.")

Plaintiffs have not directed this Court to any case in which a court has held that schools have a "special relationship" with students that gives rise to an affirmative constitutional duty on the school to protect students from harassment by classmates. Because Plaintiffs have not shown that there is a right under the Fourteenth Amendment to be protected by school officials from verbal harassment or unspecified physical altercations by fellow students, Plaintiffs have not stated a cause of action against Defendants under the Due Process Clause of the Fourteenth Amendment.

### 2. Title IX

Title IX of the Education Amendments of 1972 provides that "[n]o person in the United shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Title IX allows for a private right of action against federal fund recipients, *i.e.*, school districts, for gender discrimination in education, but not against school officials, teachers, and other individuals. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). Thus, Principal Fitton and Superintendent Baker may not be sued for a Title IX claim.

Sexual harassment is a form of discrimination for Title IX purposes, and a school district "may be liable under Title IX: (1) for deliberate indifference to student-on-student sexual harassment; (2) of which 'an official of the recipient entity with authority to take corrective action' has actual knowledge . . .; and (3) 'that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victim['s] educational experience, that the victim-student[ ][is] effectively denied equal access to an institution's resources and opportunities.'" *Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 622 (E.D.N.Y. 2011) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) and *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650-51 (1999)); *see also Marcum*, 727 F. Supp. 2d at 667. Plaintiffs have not alleged that there was any gender-based harassment or bullying against B.B. or that any sexual harassment occurred, nor have they stated any facts that could lead the Court to conclude that Defendants are liable under Title IX. Accordingly, Plaintiffs have failed to state a claim under Title IX.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Clause has been interpreted as prohibiting states from making distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Plaintiffs do not claim that Defendants made distinctions that burdened any fundamental rights, targeted any suspect classes, or intentionally treated B.B. differently than similarly

situated students.  Nor are there any factual allegations in the Complaint that could give rise to an inference that B.B. was treated differently than any other student or was subjected to an impermissible distinction.  Plaintiffs have therefore failed to state a claim under the Equal Protection Clause.  *See*, *e.g.*, *id.* at 312-13 ("'Inasmuch as [plaintiff] merely alleged that he was treated unfairly as an individual by [defendants'] actions, his equal protection claim was properly dismissed.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999)).

Because Plaintiffs have not alleged a viable claim for deprivation of any constitutional rights, the Court need not consider whether the School Board, Principal Fitton, or Superintendent Baker were responsible for any alleged deprivation.

### C.  State Claims

Plaintiffs assert the following state law claims: intentional infliction of emotional distress, negligent infliction of emotional distress, negligence per se, negligent supervision, and negligent training.  They note that the Court has supplemental jurisdiction over these state law claims under 29 U.S.C. § 1367 because they arise out of the same case or controversy as their federal claim.  Defendants set forth several arguments to support their position that the Court should dismiss each of these state law claims, including that they are immune from suit under Ohio Revised Code Chapter 2744 and that several of Plaintiffs' state claims fail as a matter of law.

When a Court has dismissed the federal claims in a case, it may, in its discretion, decline to exercise supplemental jurisdiction over the pendent state law claims.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  "The court should consider the interests of judicial economy and the avoidance of

multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182 (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)).

This case is in the early stages of litigation, and the parties only recently filed a joint discovery plan.  Because little has transpired in this Court, and because Plaintiffs have not stated a federal cause of action, the court finds it prudent to decline to exercise supplemental jurisdiction over the state claims.  28 U.S.C. § 1367(c)(3).

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss.  The federal claim is dismissed with prejudice, and the Court declines to exercise jurisdiction over the state law claims.

IT IS SO ORDERED.

    s/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court